**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 05-312 MJD/AJB |
| Plaintiff, | |
| v. | **AMENDED REPORT AND RECOMMENDATION** |
| ROBERTO RODRIGUEZ, | |
| Defendant. | |

Tracy Perzel, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

Manny K. Atwal, Esq., Assistant Federal Defender, for the defendant, Roberto Rodriguez.

This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on November 3, 2005, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. Defendant presented motions for discovery and disclosure of evidence and suppression of evidence. The Magistrate Judge issued an Order on Motions dated November 2, 2005, reserving defendant's motion to suppress search and seizure evidence [Docket No. 16] and motion to suppress statements [Docket No. 17] for submission to the District Court by Report and Recommendation.

Based upon the file and documents contained therein, along with witness testimony and exhibits received at hearing, the Magistrate Judge makes the following:

**Findings**

Willmar City Police Officer Michael Anderson is assigned to the Cee-VI Drug Task Force operating in Kandiyohi County, Minnesota. Officer Anderson was aware that grounds existed

for the felony arrest of Miguel Montez on drug charges, and on May 5, 2005, officers obtained a letter written by Mr. Montez's imprisoned girlfriend indicating that "Psycho" was staying at the Lakeview Inn Motel in Willmar. Officer Anderson knew that Montez went by the nickname "Psycho." Early that afternoon Anderson drove to the motel where he commenced surveillance and saw that a light blue Cadillac was the only vehicle parked on the west side of the building. An officer was calling the motel to determine whether Montez was a registered guest when Anderson observed the blue Cadillac backing out of its parking spot with two occupants. Officer Anderson followed in an unmarked vehicle as the Cadillac left the motel parking lot. After following for approximately five minutes and having a side view of the passenger from a distance of approximately 30 feet, Anderson noted that the two vehicle occupants were Hispanic males. Although he determined that the driver was too large to be Mr. Montez, Anderson concluded that the passenger fit the description of Mr. Montez. Based upon his surveillance observations, and the justification Mr. Montez's felony arrest, Anderson contacted other law enforcement persons to get the assistance of a marked squad car to stop the vehicle.

Kandiyohi County Sheriff's Department Deputy David Strom responded to the call for assistance and stated that he was presently on patrol in the town of Kandiyohi, Minnesota, approximately four miles east of Willmar on Highway 12. Anderson continued to follow the Cadillac as it pulled into the Burger King parking lot off Highway 12 for a momentary stop, and thereafter proceed east on Highway 12. Meanwhile, Deputy Strom was near Kandiyohi on Highway 12, facing west. When the Cadillac passed him he made a U-turn and followed, going ahead of Officer Anderson who signaled Strom to make a stop. Strom activated his lights to make the stop as the Cadillac turned south on 6th Street in Kandiyohi. The Cadillac slowed down but did not immediately stop. Deputy Strom

observed the passenger leaning forward in the front seat and apparently reaching under the seat. When the Cadillac turned to go west on McDermott Ave., Deputy Strom activated his siren. As the deputy followed and observed, the Cadillac occupants made two or three momentary stops at the side of the street, but then continued onward as the passenger signaled the driver to keep moving. The Cadillac finally came to a complete halt approximately one-half mile from the place at which the deputy first turned on his lights to make the stop.

After the stop Deputy Strom approached the Cadillac on the driver's side and asked the driver for his license and insurance information. The driver was cooperative and provided a Minnesota license which identified him as Joshua Caleb Rodriguez. When Strom asked the passenger for his name, the passenger stated that his name was Johnny or Juan Flores. He appeared agitated and was reluctant to give his last name. Strom then walked back to speak with Officer Anderson who had parked his unmarked vehicle and was watching from about a half block distance behind the stopped Cadillac. Strom reported the identifications to Anderson and they then went together to talk with the passenger. At that time Anderson was able to get a good look at the passenger and realized that he was not Miguel Montez as had been suspected. However, based upon previous contacts, Anderson recognized the passenger to be Roberto Rodriguez, the defendant in this matter, and the officer therefore determined that the person had committed the offense of falsely identifying himself to a police officer.

The defendant was removed from the vehicle, arrested and handcuffed, and he nodded affirmatively when asked if his true name was Roberto Rodriguez. As the defendant was being pat searched by Officer Anderson, he volunteered that he had dope on his person. After asking the

defendant whether he had any sharp objects in his pockets, Anderson recovered two baggies containing methamphetamine, along with a meth pipe, a lighter, and some cash.  As the defendant was being taken to a squad car, he stated to Anderson, "you missed my piece."  The officer then found a loaded .357 revolver in the defendant's front waistband.  When the defendant was being put into the squad car he stated that there was more dope in the car.  The remark was not made in response to a question by an officer.  The defendant had also been told to remove his shoes after being taken from the Cadillac.

While seated in the back seat of the squad car at the scene of the stop, defendant Rodriguez stated that he wanted to speak with someone in charge.  At that time Kandiyohi County Sheriff's Deputy and Cee-VI Drug Task Force Officer Anthony Cruze had arrived on the scene, and he met with the defendant in the back seat of the squad car to conduct an interview.  The discussion commenced at 2:21 p.m. and lasted approximately 10 minutes.  Cruze gave defendant the Miranda warning and the defendant acknowledged that he understood each of the rights and was willing to speak with the officer.  The interview was digitally recorded (Gov't. Hearing Exh. No. 6) and the recording was transcribed (Gov't. Hearing Exh. No. 5).  Mr. Rodriguez understood his rights as presented to him in English, and he was not suffering from physical or mental impairment at the time of the interview.  The defendant had previous experience with the legal system and was not subjected to intimidation, coercion or deceit designed to induce his cooperation.  Defendant was not under the influence of drugs or alcohol at the time of the interview, and he understood the substance of the questioning and the implications of his responses.  Questioning by Officer Cruze promptly ceased when the defendant stated that he wanted to speak with a lawyer before providing additional information.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**Conclusions**

1. **Vehicle Stop.** The stop of the blue Cadillac in which defendant Roberto Rodriguez was a passenger on May 5, 2005, was not unlawful. The vehicle stop was based upon reasonable articulable suspicion that the passenger in the vehicle was a particular individual, Miguel Montez, a person known to be the subject to arrest for felony drug offenses. United States v. Cummins, 920 F.2d 498, 500-01 (8th Cir. 1990). Though officer Anderson's initial belief as to the identity of the passenger proved to be mistaken, the officer's belief was objectively reasonable in light of similarities in the physical descriptions of Mr. Rodriguez and Mr. Montez (Gov't. Hearing Exh. No. 1, No. 2, No. 3, and No. 4; Def. Hearing Exh. No. 3 and No. 4). In addition, the vehicle and the passenger were observed at the motel where Mr. Montez was reasonably believed to be staying, and the Cadillac occupants engaged in evasive and furtive conduct after police squad stop lights were activated. Under these circumstances officers had sufficient legal basis for the stop and suppression of subsequently obtained statements and search and seizure evidence is not required on grounds that such evidence was the fruit of an unlawful vehicle stop.

2. Defendant Roberto Rodriguez was not unlawfully detained and questioned after the vehicle stop and suppression of statements or physical evidence on that basis is not required. Deputy Strom lawfully approached the stopped vehicle to learn the occupants' identities, and the length of the detention for purposes of obtaining identifications was not unreasonable in light of the driver's evasive driving maneuvers and the passenger's furtive movements. Furthermore, there was no diminution of reasonable suspicion based upon defendant Rodriguez's identifying himself as Johnny Flores under

circumstances whereby Deputy Strom was not advised of the particular identity of the felony arrest subject, but did have a reasonable suspicion, based upon all the circumstances, including the defendant's demeanor and evasive responses to identification questions, that the passenger had given a false name. Deputy Strom had received instructions to make the stop from Officer Anderson and the deputy properly conferred with Anderson for purposes of determining whether the passenger was the suspect at issue. Moreover, defendant was not unlawfully detained during the short time in which Strom commenced and conducted an investigation into whether the offense of providing a false name had been committed by conveying his belief that he had been given a false name to Officer Anderson, who then approached the passenger and identified him as Mr. Rodriguez. United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1997).

3. Defendant Roberto Rodriguez was lawfully arrested and detained on the basis of probable cause to believe that he had provided a false name to law enforcement officers. Suppression of statements or physical evidence on grounds that the defendant was unlawfully arrested and detained is not required.

4. Defendant Rodriguez was lawfully pat searched incident to his arrest for providing a false name to law enforcement officers. See United States v. Glenn, 152 F.3d 1047, 1050 (8th 2002). In regards to the pat search, for officer safety reasons the defendant was properly asked whether he had any sharp objects in this pockets. The defendant's statement that he had dope on his person was not made in response to interrogation calculated to elicit incriminating statements. Suppression of statements made in connection with the pat search and evidence recovered from defendant's person as the result of the pat search is not required.

      5. Defendant's statements to an officer regarding his having "missed my piece" as well as defendant's subsequent statement that "there's more dope in the car" were custodial statements and were made before the Miranda advice of rights had been given to him, but the statements were spontaneous and voluntary, and they were not the product of an unlawful arrest or made in response to questioning by law enforcement officers. United States v. Waloke, 962 F.2d 824, 829 (8th Cir. 1992). Because the statements were spontaneous and were not a consequence of police interrogation, they were not obtained in violation of the defendant's Fifth Amendment privilege against self-incrimination or other rights under Miranda. Furthermore, the statements were not the result of defendant's will being overborne through police coercion or pressure and were not obtained as a result of defendant's own physical or mental impairment or vulnerability. Suppression of the statements is not required.

      6. Defendant Roberto Rodriguez's Bailey's recorded statements to Cee-VI Drug Task Force Officer Anthony Cruze pursuant to interview and questioning at the time of defendant's arrest were provided voluntarily and were not obtained in violation of defendant's constitutional rights. Defendant was properly advised and was able to understand and comprehend his rights pursuant to Miranda. He was not subjected to force, threats, or promises in exchange for his statements and he effectively waived his right to remain silent and his right to the assistance of counsel. Upon considering the totality of circumstances, the Court is persuaded that defendant's will was not overborne; and he knowingly, intelligently, and voluntarily waived his right to remain silent and his right to have an attorney present during questioning. Moreover, the defendant's interview statements were not the fruit of an unlawful vehicle stop or an unlawful arrest. Suppression of defendant's interview statements is not required.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

It is **hereby recommended** that:

1. Defendant Roberto Rodriguez's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 16]; and

2. Defendant Roberto Rodriguez's Motion to Suppress Statements, Admissions and Answers be **denied** [Docket No. 17].

Further, it is **hereby ordered** that defendant's Motion to Allow Late Filing is **granted** [Docket No. 25]. Defendant's memorandum in support of suppression motion was received and considered by the court.

Dated:     December 2, 2005

                                          s/ Arthur J. Boylan
                                          Arthur J. Boylan
                                          United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before December 9, 2005.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.